# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

SHAFIA JONES,

                    Plaintiff,

          v.                                    Case No. 16-CV-1156

CAPTAIN KEVIN GALSKE, *et al.*,

                    Defendants.

---

# DECISION AND ORDER

---

Shafia Jones, a Wisconsin state prisoner who is representing herself, filed a complaint under 42 U.S.C. § 1983, alleging that the defendants, various corrections officers at Fond du Lac County Jail, violated her civil rights. On March 31, 2017, the court screened Jones's complaint and allowed her to proceed with two Fourteenth Amendment claims against the defendants alleging excessive force and cruel and unusual punishment. (ECF No. 11.) Jones consented to magistrate judge jurisdiction on September 13, 2016, and the defendants consented on May 10, 2017. (ECF Nos. 5 and 24.)

Jones subsequently filed two amended complaints. (ECF Nos. 14 and 43.) On August 23, 2017, the court reaffirmed its decision to allow Jones to proceed on the

Fourteenth Amendment claims. (ECF No. 42.) The court also allowed her to proceed on a First Amendment claim against defendant Rachel Biertzer for preventing Jones from attending a televised bible study. (*Id.*)

On January 8, 2018, the defendants filed a motion for summary judgment against Jones for failure to exhaust administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"). (ECF No. 58.) On January 20, 2018, the defendants filed a second motion for summary judgment on the merits. (ECF No. 66.) On July 12, 2018, Jones filed a motion to schedule a jury trial. (ECF No. 79.) On September 10, 2018, Jones filed another motion to schedule a jury trial and ask for a decision on the pending summary judgment motions. (ECF No. 81.) That same day, she also filed a motion to extend the discovery deadline. (ECF No. 82.)

These motions are fully briefed and ready for the court's decision.

## FIRST AND SECOND MOTIONS FOR SUMMARY JUDGMENT

### A. Relevant Facts

The facts in this section are taken from the defendants' Proposed Findings of Fact located within both the first and second motions for summary judgment (ECF Nos. 58

and 66) [1] and from Jones's proffered findings of fact and declarations in her responses to

both motions. (ECF Nos. 63-65 and 72-73.) [2]

### i. Undisputed Facts

Jones was booked into the Fond du Lac County Jail as a pre-trial detainee on

March 31, 2015, where she remained through January 27, 2016. (ECF No. 66, ¶¶ 1-2 of

"Proposed Material Facts.") Jones is currently an inmate at Taycheedah Correctional

Institution in Fond du Lac and was an inmate there when she filed this lawsuit. (*Id.*, ¶ 2

of "Uncontested Material Facts.") All of the defendants were employed by the Fond du

Lac County Sheriff at all times relevant to this mater. (*Id.*, ¶ 3.) During her confinement

at Fond du Lac County Jail, Jones filed at least five grievances, unrelated to the matter at

issue. (ECF No. 58, ¶ 9 of "Proposed Material Facts.") In January 2016 Jones was on

administrative confinement. (ECF No. 66, ¶ 4.)

### ii. The Defendants' Facts

The defendants assert that on January 20, 2016, at 9:04 a.m. Jones covered up the

camera in her cell and proceeded to cause her toilet to flood. (ECF No. 66, ¶ 6.) At

approximately 9:15 a.m., she started pounding and yelling on her cell door because she

---

[1] The defendants included their Proposed Findings of Fact required under Civil Local Rule 56(b) within the body of their Memorandum of Law in Support of Motion for Summary Judgment (ECF No. 66). All citations to the facts in this section refer to the Proposed Findings of Fact section within the Memorandum. Any lack of clarity as to the location of the facts is a result of defendants not including the Proposed Findings of Fact in a separate document.

[2] Like the defendants, Jones also did not have a separate Proposed Findings of Fact but instead included her Proposed Findings of Fact within the body of her Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment (ECF No. 72). All citations to the facts in this section refer to the Proposed Findings of Fact section within the Memorandum. Any lack of clarity as to the location of the facts is a result of Jones not including the Proposed Findings of Fact in a separate document.

was not yet released to go into the dayroom. (*Id.*, ¶¶ 5-6.) Defendant Hagman went to release Jones to the dayroom and discovered that water tainted with blood, urine, and feces was flowing from Jones's cell. (*Id.*, ¶ 7.) As Hagman was attempting to control the flooding, Jones threw a soiled feminine napkin through her cell flap door, striking Hagman in the face and neck. (*Id.*, ¶ 8.) Hagman then went to the emergency room pursuant to the significant exposure protocol. (ECF No. 66-3, Ex. B.) Jones proceeded to cover up the window in her cell. (ECF No. 66, ¶ 11.)

Administrative personnel decided to move Jones to an isolation cell and instructed defendants Don Cook, Timothy Cross, and Robert Tank to dress in "Cell Entry Gear" to complete the move. (ECF No. 66, ¶ 12.) When Cook, Cross, and Tank entered the cell, they found Jones sitting at her table and ordered her to stand and place her hands on the wall. (*Id.*, ¶ 14.) When Jones refused, they restrained Jones against the wall. (*Id.*, ¶ 15.) They then removed Jones from her cell and escorted her to the isolation cell. (*Id.*, ¶¶ 17-18.)

When Jones arrived in the isolation cell, she was told that she would be placed in a suicide smock because of her unstable behavior. (ECF No. 66, ¶ 19.) According to the defendants, because Jones was resisting, refusing to cooperate, and pulling away, they decided she would be cut out of her clothing. (*Id.*, ¶¶ 21-24.) Defendant Mary Steberg used scissors to cut Jones out of her shirt and undershirt while she was restrained by Cook, Cross, and Tank. (*Id.*, ¶ 25.) Steberg then covered Jones with a smock, and

defendant Tracy Schultz removed her pants, underwear, feminine napkin, and shoes. (*Id.*, ¶¶ 26-27.)

After her clothes were removed, Jones was asked to cooperate, and Jones responded, "I'm just getting started." (ECF No. 66, ¶ 28.) Jones was repeatedly asked if she was going to harm herself; Jones did not answer. (*Id.*, ¶ 29.) At that time, because of Jones's "violent and unpredictable behavior," the defendants decided that Jones would be placed in a restraint chair. (*Id.*, ¶ 30.) The defendants assert that Jones struggled, resisted, and refused to be secured to the chair, so Steberg told Jones that a Taser would be used. (*Id.*, ¶¶ 33-34.) Because Jones continued to resist, Biertzer shot the Taser into Jones's right shoulder. (*Id.*, ¶ 35.) According to the defendants, during the struggle Jones' smock fell off and was put back on. (*Id.*, ¶ 37.) At noon, when Jones finally indicated that she was willing to cooperate, Biertzer, Cook, and Tank removed her from the restraint chair. (*Id.*, ¶ 38.)

Jones did not file a grievance form following this incident pursuant to the Fond du Lac County Jail inmate grievance procedure as outlined in the jail's rules and regulations for inmates. (ECF Nos. 58, ¶¶ 3-7, ¶10 and 58-1, Ex. B.) The grievance procedure outlines the requirements for the grievance form and states that it must be submitted within 48 hours from the time of the incident being grieved. (ECF No. 58-1, Ex. B.) The inmate grievance procedure further states that policies, discipline, rules, regulations, and procedures of the jail are not grievable. (*Id.*)

### iii. Jones's Facts

Jones asserts that the January 20, 2016 incident happened differently. While Jones does not contest that she covered up her cell camera or that the toilet flooded, she denies that she caused the flooding. (ECF No. 72, ¶¶ 6-7.) She also asserts that the water did not contain blood, urine, or feces. (*Id.*, ¶ 7.) Additionally, Jones states that she did not assault Hagman by throwing a soiled feminine napkin through the cell door flap. (*Id.*, ¶ 15.) Instead, Jones asserts that Hagman fabricated the assault as retaliation for a previous grievance Jones filed against her on January 11, 2016, and because Jones refused to consent to a blood draw on the day of the incident. (*Id.*, ¶ 7, ¶ 15.) Jones further states that, because she was not promptly allowed in the dayroom, she was prevented from attending televised bible study. (*Id.*, ¶¶ 12-13.)

Jones also states that, when Cook, Cross, and Tank entered her cell to remove her to the isolation cell, she was sitting calmly at her table reading legal materials and was not agitated. (ECF No. 72, ¶ 9.) Cook, Cross, and Tank, dressed in what Jones characterizes as "swat gear," entered the cell and forcefully restrained her against the wall, causing bruising. (*Id.*, ¶¶ 9 and 11; ¶ 13 of "Plaintiff's Response to Defendants' Proposed Material Facts.")

Once placed in the isolation cell, Jones denies that she resisted or refused to cooperate. (ECF No. 71, ¶ 11; ¶ 8 of "Plaintiff's Proposed Material Facts.") Jones states that she asked questions in an attempt to understand what was happening. (*Id.*) Jones

further states that the suicide smock, including the need to be cut out of her prison clothes in front of three male correctional officers, was unwarranted because she in no way communicated that she was suicidal or would harm herself. (*Id.*, ¶ 10.) Jones contends that she was placed in a suicide smock because she refused to consent to a blood draw. (*Id.*, ¶ 10 of "Plaintiff's Proposed Material Facts.")

Jones denies that she was violent and unpredictable. (ECF No. 72, ¶¶ 30 and 32 of "Plaintiff's Response to Defendants' Proposed Material Facts.") And while Jones admits that she did not willingly sit in the restraint chair (*Id.*, ¶ 31 of "Plaintiff's Response to Defendants' Proposed Material Facts"), she also asserts that she was fully restrained prior to the use of the Taser, rendering using the Taser unnecessary. (*Id.*, ¶ 11.) According to Jones, she was then left in the restraint chair with a spit bag on her head and not released until she consented to the blood draw. (*Id.*, ¶ 38 of "Plaintiff's Response to Defendants' Proposed Material Facts.")

After the incident, Jones states that she fully intended to file a grievance. (ECF No. 65, ¶ 10.) She states that she requested grievance forms from Biertzer on January 20, 2016, and from Sergeant Gigstead and Steberg on January 22, 2016, but the requests were all denied. (ECF Nos. 65, ¶ 9 and 63, ¶ 10.)

### iv.  Surveillance Video

The defendants and Jones both submitted copies of a surveillance video that depicts part of the January 20, 2016 incident. (ECF Nos. 50 and 66-4.) The video has no

audio. The first part of the video lasts about a minute and shows Jones attempting, and ultimately succeeding, to cover up her cell camera by throwing what appears to be toilet paper she wetted in the sink. (ECF No. 66-4 at Part 1.) Consequently, the flooding, the purported assault with a feminine napkin, Jones's demeanor in her cell, and the defendants' actions in her cell were not caught on camera.

The second part of the video shows about 20 seconds of Jones being accompanied from her cell to the isolation cell by three male correctional officers dressed in shielded helmets and vests, two of whom are holding Jones by her elbows. (ECF 66-4 at Part 2.) A female correctional officer is following behind with a Taser in her hand but not pointed at Jones. (*Id.*) Jones does not appear to be physically resisting or struggling with her escorts. (*Id.*)

The third part of the video shows what happened in the isolation cell. (ECF No. 66-4 at Part 3.) Jones enters, restrained by two of the male correctional officers. Jones does not appear to be physically struggling or resisting, but she appears to be talking to the correctional officers. (*Id.* at 00:00:22.) The female correctional officer enters the isolation cell, the Taser still in her hand. (*Id.* at 00:00:35.) She removes the mattress from the cell. (*Id.* at 00:00:50.) While Jones remains handcuffed and the male officers hold her arms, she appears to be speaking in an agitated manner, appearing to direct some of her comments to a female officer who entered the cell. (*Id.* at 00:01:28-00:02:24.)

Shortly thereafter, another female correctional officer enters the cell, bringing in a suicide smock, and Jones is uncuffed. (*Id.* at 00:03:30.) Although Jones is still physically restrained and does not appear to be struggling, the second female officer places her back in handcuffs. (*Id.* at 00:03:57.)

The second female officer is then handed scissors and begins to cut Jones out of her shirt and undershirt while she is restrained by two male officers. (*Id.* at 00:04:17.) While she is being cut out of her shirt, Jones turns slightly, and the male officers bend her down and one places his hand on the back of her neck. (*Id.* at 00:05:41.) While Jones is still bent over with her head restrained, her shirt and undershirt are fully removed, and the suicide smock is placed over her head and torso. (*Id.* at 00:06:49.)

The second female officer then begins to remove Jones's pants and undergarments. (*Id.* at 00:07:29.) Jones is still fully restrained, bent over, and covered, and she does not appear to be physically struggling or resisting. (*Id.*) A blanket is then put on the cell's bed, and the male officers appear to direct Jones to kneel on it. (*Id.* at 00:08:35.) Jones is then pushed further up against the wall while her handcuffs are removed. (*Id.* at 00:09:30.) All three male officers restrain Jones while the female officer with the Taser appears to be talking to Jones. (*Id.* at 00:09:50.)

A restraint chair is then brought in, and Jones is slid into the chair. (*Id.* at 00:10:15-00:11:12). This appears to require some effort by the officers but it is unclear to what degree this effort might be the result of Jones actively resisting the officers' efforts.

(*Id.*) The suicide smock falls off Jones, at which point she is completely naked. (*Id.*) As Jones is strapped into the chair, she appears to squirm, shaking her head aggressively as a female officer attempts to hold it. (*Id.* at 00:11:53.) Jones's right arm is strapped into the chair, and she stops wiggling. (*Id.*) A few seconds later, the female officer with the Taser places it on Jones right shoulder. (*Id.* at 00:12:00.) The five officers who were restraining Jones release her. (*Id.*) Although Jones does not appear to be moving, the female officer shoots her in the right shoulder with the Taser. (*Id.*)

After use of the Taser, it takes the officers less than a minute to fully strap Jones's legs to the chair, and Jones is partially covered with the smock. (*Id.* at 00:13:07.) At this point, Jones does appear to be struggling against the restraints, moving her head. (*Id.* at 00:12:35-00:13:07.) A spit hood is placed on Jones's head. (*Id.* at 00:13:37.) The officers appear to attempt to fully restrain Jones in the chair while determining how to cover her up. (*Id.*) One of the male officers is given the Taser and places it on Jones's right thigh. (*Id.* at 00:13:55-00:14:07.). Jones is wiggling but her limbs and torso at this point appear to be fully strapped to the chair. (*Id.*)

The officers finish setting up the restraint chair and fully cover Jones with a blanket. (*Id.* at 00:16:48-00:17:09.) Two women in purple t-shirts who were not previously seen briefly enter the cell, after which Jones is left alone in the isolation cell, strapped to the chair, in a spit hood and covered by a blanket. (*Id.* at 00:18:30.) The officers periodically check in on Jones. (*Id.* at 00:18:31-01:23:36.) After approximately 78

minutes, the female officer who originally had the Taser removes the spit hood. (*Id.* at 01:23:36.) Jones and the female officer appear to have a discussion. (*Id.* at 01:24:00-01:28:00.) The discussion continues for approximately four minutes. (*Id.*) Jones is released from the chair and stands, still covered in blankets (*Id.* at 01:30:00.) The video then ends.

## B.  Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). So, "if after resolving all disputed facts and drawing all reasonable inferences in favor of the [non-moving party], there remains no genuine issue of material fact," summary judgment is appropriate. *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009).  "Material facts" are those that "might affect the outcome of the suit."  *See Anderson*, 477 U.S. at 248.  A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Id.*

A party asserting that a fact is genuinely disputed, or not disputed, must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations,

stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## C. Analysis

In their first motion for summary judgment, the defendants contend that Jones failed to exhaust her administrative remedies because she failed to file a grievance related to the January 20, 2016 incident.

In their second motion for summary judgment the defendants contend that the facts conclusively show that their actions were objectively reasonable under the circumstances. Therefore, they did not violate the Fourteenth Amendment by subjecting Jones to excessive force or cruel and unusual punishment. The defendants also claim that they are entitled to qualified immunity because a reasonable officer would not understand the action of restraining a violent detainee to violate the detainee's constitutional rights. Finally, the defendants contend that they did not violate Jones's First Amendment right to freely exercise her religious beliefs by restricting her access to televised bible study because there was a penological interest that outweighed Jones's religious interests.

### i.  Exhaustion of Administrative Remedies

The defendants argue that summary judgment should be granted because Jones has not submitted any sworn testimony or affidavit that establishes a genuine issue of material fact regarding whether she failed to exhaust her administrative remedies. (ECF No. 68, ¶ 7.) The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Failure to exhaust administrative remedies "is an affirmative defense under the PLRA, and … inmates are not required to specially plead or demonstrate exhaustion." *Jones v. Bock*, 549 U.S. 199, 216 (2007). The burden to prove that Jones did not exhaust her administrative remedies is on the defendants. *Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006) (internal citation omitted).

In her response to the defendants' first motion for summary judgment Jones submits, under penalty of perjury, specific and detailed facts stating that Fond du Lac County Jail's grievance process was unavailable to her relating to the events of January 20, 2016. A plaintiff can convert the factual assertions contained in a response into an affidavit "'by declaring under penalty of perjury that the [response] was true, …' thereby complying with Federal Rule of Civil Procedure 56(e)." *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (quoting *Ford v. Wilson*, 90 F.3d 245, 247 (7th Cir. 1996)). In *Dale,*

the plaintiff provided a response that contained factual allegations and referenced them in an "Affidavit of Support" in which he swore under penalty of perjury that the factual allegations contained in his response were true. *Id.* The *Dale* court held that the plaintiff's response, when considered with the "Affidavit of Support," was admissible under Rule 56(e) and "constitute[d] competent evidence to rebut the defendants' motion for summary judgment." *Id.* As in *Dale*, Jones submitted a declaration incorporating by reference the facts alleged in her response to the defendants' motion for summary judgment, specifically stating under penalty of perjury that the information put forth was true and correct. (ECF No. 65, ¶ 1.)

Also, the plaintiff's factual assertions must be specific, detailed, and based on personal knowledge to be admissible as evidence. *Kaba*, 458 F.3d at 682. In the context of the exhaustion of administrative remedies—specifically, whether an inmate was improperly denied a grievance form—this includes providing facts that demonstrate from whom the inmate requested forms, which form was requested, and when the form was requested. *Dale*, 376 F.3d at 655-656.

Jones states that she requested the grievance form from three individuals on two separate occasions. (ECF No. 65, ¶ 9; ECF No. 63, ¶ 10.) She states that she requested a grievance form from Biertzer on January 20, 2016, and from Sergeant Gigstead and Steberg on January 22, 2016. (*Id.*) She further says that she was denied the forms on both

dates. (*Id*.) Because these facts are pled with enough specificity and detail and are sworn to under penalty of perjury, this court can consider them admissible evidence.

Jones is not required to exhaust her administrative remedies "when the prison officials responsible for providing grievance forms refuse to give a prisoner the forms necessary to file an administrative grievance." *Hill v. Snyder*, 817 F.3d 1037, 1041 (7th Cir. 2016). The defendants fail to respond to Jones's assertions that the defendants twice refused to give her a grievance form. In fact, they do not submit any evidence regarding Jones's purported requests for and the subsequent denials of grievance forms for the January 20, 2016 incident.

The defendants have failed to meet their burden of proving that no genuine issues of material fact exist as to whether Jones failed to exhaust her administrative remedies. Thus, the court will deny the defendants' motion for summary judgment on exhaustion grounds.

### ii. Fourteenth Amendment Claims of Excessive Force

Jones alleges that the defendants violated her Fourteenth Amendment rights when they used excessive force in removing her—a pre-trial detainee—from her cell and when defendant Biertzer shot her with the Taser. The defendants argue that these claims should be dismissed on summary judgment because the defendants' actions were objectively reasonable.

Because Jones was a pre-trial detainee at the time of the incident, her excessive force claim falls under the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment clause. *Lewis v. Downey*, 581 F.3d 467, 473 (7th Cir. 2009). The Fourteenth Amendment's Due Process Clause "protects a pretrial detainee from the use of excessive force that amounts to punishment." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). To prove that force was excessive, a "pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* To determine whether the force was objectively unreasonable, courts must take into account the particulars of each case, considering "the perspective of a reasonable officer … including what the officer knew at the time." *Id.* Courts must also consider the government's "need to manage the facility" and defer to the "policies and practices [that] … are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 540, 547 (1979); *see Kingsley*, 135 S. Ct. at 2473.

Considering the facts in a light most favorable to Jones, a reasonable jury could conclude that the defendants, in extracting Jones from her cell and in shooting the Taser, purposely or knowingly used force that was objectively unreasonable. Regarding the cell extraction, of which there is no video, Jones contends that Cook, Cross, and Tank entered her cell and needlessly forcefully restrained her against the wall, causing bruising. (ECF No. 72, ¶ 9, ¶ 11; ¶ 13 of "Plaintiff's Response to Defendants' Proposed

Material Facts.") Jones claims the force was needless because she was calmly sitting at her table reviewing legal documents. (*Id.*, ¶ 9.) Jones states that she was not agitated. (*Id.*) Jones also provides evidence that Hagman had reason to fabricate the assault with the soiled feminine napkin in retaliation for a grievance Jones filed against her on January 11, 2016. (ECF No. 72, ¶ 7, ¶ 15.) In short, Jones adequately contested the defendants' version of their encounter in her cell on January 20, 2016. *See Sanchez De Anda v. Wener*, No. 16-CV-753-JPS, 2017 WL 3724184, at *4 (E.D. Wis. Aug. 28, 2017). What happened during the cell extraction requires "credibility determinations … beyond the Court's charge at this stage" and a jury needs to decide what really happened in Jones's cell that day. *Id.*

Regarding the use of the Taser, the defendants justify its use because of Jones' "violent and unpredictable behavior." (ECF No. 66, ¶ 30.) Where pre-trial detainees have been violent, aggressive, and posed a threat to officers, courts have found that no reasonable jury could find that the defendants acted unreasonably when shooting a Taser to compel obedience. In *Husnik v. Engles*, No. 10-C-781, 2012 WL 781730, at *3 (E.D. Wis. Mar. 7, 2012), even when the facts were taken in a light most favorable to the plaintiff, it was still clear that the plaintiff pushed and kicked two officers, verbally abused a judge, and physically struggled during transport to his cell while shouting obscenities. Thus, the court concluded that no reasonable jury could find that using a Taser against the plaintiff under those circumstances was unreasonable. *Id.* And in

*Forrest v. Prine*, 620 F.3d 739, 742, 746, (7th Cir. 2010), the court found that no reasonable jury could conclude that the correctional officers acted unreasonably in deploying the Taser because the record showed "a chaotic scene" where the plaintiff was under the influence of something, pacing back and forth, and shouting obscenities. In *Lewis*, by contrast, the court found that a jury could reasonably determine that the use of a Taser violated the plaintiff's constitutional rights where the Taser was used against a plaintiff who was not agitated or physically aggressive and did not pose a threat to the officers as he was lying quietly on his bed. 581 F.3d at 478.

Here, Jones states that she was calmly reading legal materials when Cook, Cross, and Tank came to move her to the isolation cell. (ECF No. 72, ¶ 9.) Once in the isolation cell, while she admits she was asking questions in an attempt to understand what was going on, she denies that she was resisting, uncooperative, violent, or unpredictable. (*Id.*, ¶ 11; ¶ 8 of Plaintiff's Proposed Material Facts;" ¶ 30, ¶ 32 of "Plaintiff's Response to Defendants' Proposed Material Facts.") She further claims that she was fully restrained in the restraint chair prior to being shot with the Taser. (*Id.*, ¶ 11.)

Besides Jones' version of the Taser incident, the court also has the benefit of the surveillance video. Considered in the light most favorable to Jones, a reasonable jury could conclude that the use of the Taser was excessive force in violation of Jones's constitutional rights. The video shows multiple male officers in "Cell Entry Gear" restraining Jones in such a way that they have her under control. (ECF No. 66-4 at Part

2.) Jones remains relatively calm and still while she is being cut out of her clothes. (*Id.* at Part 3, 00:04:17-00:05:41.) And while the video does show that Jones did not willingly sit down in the restraint chair, she did not appear to be violently resisting. (*Id.* at 00:10:15-00:11:12.) When in the chair, before the use of the Taser, Jones appears to be at least partially restrained, with at least her right arm fully strapped in to the chair. (*Id.* at 00:11:53.)

Thus, there is enough evidence on the record for a reasonable jury to find that Jones was appropriately restrained, not a threat to the defendants, and not physically resisting the defendants at the time she was shot with the Taser, rendering use of the Taser objectively unreasonable.

As such, defendants have not demonstrated that they are entitled to summary judgment on Jones's Fourteenth Amendment excessive force claims.

### iii. Qualified Immunity

The defendants argue that they are protected from liability because they have qualified immunity from claims brought under 42 U.S.C. § 1983. "To defeat a defense of qualified immunity, [a plaintiff] must demonstrate (1) that the guard's conduct violated [her] constitutional rights, and (2) that the violated right was clearly established at the time of the alleged misconduct." *Lewis*, 581 F.3d at 478. For the second half of the inquiry, courts "must determine whether, operating under the state of the law as it existed at the time of relevant events, 'a reasonable officer would have known that the

particular action at issue . . . was unlawful.'" *Id.* (quoting *Hill v. Shelader*, 992 F.2d 714, 718 (7th Cir 1993)).

As discussed above, this court has already determined that a reasonable jury could find that the defendants violated Jones's constitutional rights. As such, the only question remaining is whether, operating under the state of the law as it existed as of January 20, 2016, a reasonable officer would have known that extracting Jones from the cell and shooting a Taser under the circumstances here violated her constitutional rights.

When considered in the light most favorable to Jones, the facts could allow a reasonable fact finder to conclude that a reasonable prison official would know that the use of force to extract Jones from her cell when, according to her, she was sitting calmly reading legal materials violated her constitutional rights. Under Jones's version of the facts, where she posed no threat, a reasonable officer would understand that slamming her up against a wall was unlawful. See *Hendrickson v. Cooper*, 589 F.3d 887, 891 (7th Cir. 2009) (holding that an inmate's constitutional rights are violated where prison guards use physical force when the inmate poses no threat).

Regarding the use of the Taser, *Lewis* found that, where the plaintiff was not struggling or resisting, "a reasonable officer would understand that employing a taser gun under the version of the facts that [plaintiff] has described would violate the prisoner's constitutional rights." *Lewis,* 581 F.3d at 479. Thus, it was clearly established

on January 20, 2016, that using a Taser on Jones in the manner she alleges—after she was restrained and unable to resist—would violate her constitutional rights. A reasonable jury could find that the defendants' use of the Taser under these circumstances was unlawful.

Thus, the defendants have not demonstrated that they are entitled to summary judgment on Jones's Fourteenth Amendment claims on the ground that they are entitled to qualified immunity.

### iv. First Amendment Claim

Jones contends that the defendants infringed on her rights under the Free Exercise Clause of the First Amendment when they did not release her into the dayroom at 9:00 a.m. on January 20, 2016, to watch a televised bible study. (ECF No. 72, ¶¶ 12-13.) While prisoners have a First Amendment right to exercise their religious beliefs, that right "is not unfettered." *Ortiz v. Downey*, 561 F.3d 664, 669 (7th Cir. 2009). Prison and jail officials can restrict an inmate's ability to practice her faith where "the restriction is reasonably related to a legitimate penological interest." *Id.* To succeed on a claim under the Free Exercise Clause, the inmate "must first establish that [her] right to practice [her religion] was burdened in a significant way." *Kaufman v. McCaughtry*, 419 F.3d 678, 683 (7th Cir. 2005). The jail or prison "may restrict the inmate's practices if its legitimate penological interests outweigh the prisoner's religious interests." *Id.*

Jones has not met her burden of establishing that her right to practice her religion was burdened in a significant way. She complains only about a brief delay that occurred on one occasion. She also did not provide any evidence demonstrating that the defendants' penological interests were illegitimate or failed to outweigh Jones's religious interests. The defendants submitted an affidavit stating that Jones's release into the dayroom was delayed that morning because they were ensuring that Jones was authorized to be in the dayroom at the same time as another particular inmate. (ECF No. 66-2, Ex. B.) The defendants have a legitimate interest in maintaining the security of the facility, which necessarily includes confirming whether an inmate is authorized to be in the dayroom at a particular time or under particular circumstances. *See Kaufman*, 419 F.3d at 683. Maintaining jail security outweighs Jones's interest in promptly watching a bible study program on one occasion.

Therefore, the defendants have demonstrated that they are entitled to summary judgment with respect to Jones's First Amendment claim.

**MOTIONS TO SCHEDULE A JURY TRIAL**

On July 12, 2018, and September 10, 2018, Jones filed motions requesting this court to schedule a jury trial. (ECF Nos. 79 and 81.) The September 10 motion also requested that the court rule on the pending summary judgment motions. Because the court has now done so, that portion of the motion is moot. Regarding the motions asking that the court schedule a jury trial, filing such motions does not expedite moving

the case forward. The court will deny the motions. However, given the outcome on the motions for summary judgment, the court will set a status conference to discuss further proceedings, including setting a trial date.

## MOTION TO EXTEND DISCOVERY DEADLINE

On September 10, 2018, Jones also filed a motion to extend the discovery deadline. (ECF No. 82.) The discovery deadline expired on January 2, 2018. Jones was able to competently respond to the defendants' summary judgment motions filed after the passing of the discovery deadline. As such, Jones's motion to extend the discovery deadline is denied.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' first motion for summary judgment (ECF No. 58) is **DENIED.**

**IT IS FURTHER ORDERED** that the defendants' second motion for summary judgment (ECF No. 66) is **GRANTED IN PART AND DENIED IN PART** as described herein.

**IT IS FURTHER ORDERED** that the plaintiff's motions to schedule a jury trial (ECF Nos. 79 and 81) are **DENIED.**

**IT IS FURTER ORDERED** that the plaintiff's motion to extend the discovery deadline (ECF No. 82) is **DENIED**.

Dated at Milwaukee, Wisconsin this 27th day of September, 2018.

BY THE COURT

WILLIAM E. DUFFIN
United States Magistrate Judge